UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ELIZABETH C.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:25-cv-00455<br><br>Magistrate Judge Daphne A. Oberg |

Elizabeth C.[1] brought this action for judicial review of the denial of her application for disability insurance benefits.[2] The administrative law judge (ALJ) who addressed Ms. C.'s application determined she did not qualify as disabled.[3] Ms. C. argues the ALJ erred in the residual functional capacity assessment by ignoring the seasonal nature of her mood disorder.[4] As explained below, the ALJ considered Ms. C.'s reports regarding the seasonal nature of her symptoms, and substantial evidence supports his findings. Accordingly, the Commissioner's decision is affirmed.[5]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the plaintiff is referred to by first name and last initial only.

[2] (Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 17–29, Doc. No. 7.)

[4] (*See* Opening Br. 4, Doc. No. 8.)

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 6.)

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[11] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

---

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

To determine if a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;
2) she has a severe medically determinable physical or mental impairment;
3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);
4) she has the residual functional capacity to perform past relevant work; and
5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

---

[13] 42 U.S.C. § 423(d)(1)(A).

[14] *Id.* § 423(d)(2)(A).

[15] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

In the first four steps, the claimant has the burden of establishing disability.[16] And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. C. applied for disability insurance benefits under Title II of the Social Security Act,[18] alleging she became disabled in June 2022.[19] After an administrative hearing,[20] the ALJ issued a decision in November 2023, denying benefits.[21]

At step two of the sequential evaluation, the ALJ found Ms. C. had the severe impairments of "disorders of the gastrointestinal system (including cyclical vomiting); migraine headaches; depressive/bipolar related disorders; anxiety/obsessive-compulsive disorders; and[] attention deficit/hyperactivity disorder (ADHD)."[22] He concluded Ms. C. also had nonsevere impairments of obesity, celiac disease, eating disorder, and laryngitis.[23] At step three, the ALJ found Ms. C.'s impairments did not meet or medically equal an impairment listing.[24]

---

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] 42 U.S.C. §§ 401–434.

[19] (*See* Tr. 17, 196–97.)

[20] (*See* Tr. 35–66.)

[21] (Tr. 17–29.)

[22] (Tr. 19.)

[23] (Tr. 20.)

[24] (*Id.*)

The ALJ then determined Ms. C. had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [She] can tolerate occasional exposure to noise above level 3; is limited to jobs that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep tasks, easily resumed after momentary distraction; and, is limited to jobs that do not require more than occasional work-related interaction with the public, co-workers, and supervisors.[25]

At step four, based on this RFC and the testimony of a vocational expert, the ALJ determined Ms. C. could not perform past work.[26] But at step five, based on the expert's testimony, the ALJ concluded Ms. C. could perform other jobs in the national economy.[27] Accordingly, the ALJ found Ms. C. not disabled and denied her claim.[28] This decision became final when the Appeals Council denied Ms. C.'s request for review.[29]

**ANALYSIS**

Ms. C. argues the ALJ erred in the RFC assessment by ignoring the seasonal nature of her mood disorder.[30] Specifically, she contends the ALJ ignored evidence of

[25] (Tr. 22.)

[26] (Tr. 27–28.)

[27] (Tr. 28–29.)

[28] (Tr. 29.)

[29] (Tr. 1–3.)

[30] (*See* Opening Br. 4, Doc. No. 8.)

greater limitations during winter months and relied on "cherry-pick[ed]" evidence from other seasons.[31] Ms. C. has not shown error.

A claimant's RFC reflects the most she can do in a work setting considering her limitations.[32] In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[33] The ALJ considers all relevant evidence in the record.[34] "[A]lthough an ALJ is entitled to resolve conflicts in the record, [he] may not pick and choose among medical reports, using portions of evidence favorable to [his] position while ignoring other evidence, or mischaracterize or downplay evidence to support [his] findings."[35]

Here, the record shows the ALJ considered Ms. C.'s allegations regarding the seasonal nature of her mental impairments, and he did not engage in impermissible cherry-picking. In discussing Ms. C.'s mental health treatment records, the ALJ noted that in October 2022, Ms. C. reported her depression was "season[al] and not severe yet."[36] The ALJ also discussed her reports that her mental symptoms improved in some

---

[31] (*Id.* at 4, 6–7.)

[32] *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[33] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[34] *See* 20 C.F.R. § 404.1545(a)(3).

[35] *Bryant v. Comm'r*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citations and internal quotation marks omitted) (describing this is as "impermissible cherry-picking").

[36] (Tr. 25 (citing Tr. 371).)

visits and worsened in others.[37] For example, he noted that Ms. C. reported "improved depression but elevated anxiety" in June 2022;[38] increased anxiety and depression in July 2022;[39] doing "well overall" in October 2022;[40] and improved depression in March 2023.[41]

Contrary to Ms. C.'s argument, the ALJ did not ignore evidence from winter months. The ALJ observed that Ms. C. had "generally good/normal/intact" mental status findings in October 2022, and "[o]ther evidence" from 2022 and early 2023 "note[d] similar findings on mental status examination[s], namely intact attention and memory."[42] In support, the ALJ cited treatment records from all seasons, including winter months—specifically: December 16, 2022, February 1, 2023, and February 22, 2023.[43] The ALJ found this evidence inconsistent with Ms. C.'s "subjective allegations of being unable to remember simple things and unable to focus on and complete simple tasks."[44]

---

[37] (Tr. 24–25.)

[38] (Tr. 24 (citing Tr. 387).)

[39] (Tr. 25 (citing Tr. 376–77).)

[40] (*Id.* (citing Tr. 371).)

[41] (*Id.* (citing Tr. 777).)

[42] (*Id.*)

[43] (Tr. 747, 753, 1113–14.)

[44] (Tr. 25.)

Ms. C. suggests the ALJ mischaracterized this evidence.[45] She points to her reports of worsening depressing during her December 16, 2022 and February 1, 2023 visits.[46] And in the February 1, 2023 mental status examination, the provider described Ms. C.'s "mood/affect" as "down, anxious, elevated, mixed, congruent."[47] But in the same examination, the provider noted Ms. C. had a normal appearance, intact memory and attention, and a logical and goal-directed thought process—consistent with the ALJ's description.[48] Further, in the December 16, 2022 mental status examination, the provider documented "good, elevated, [and] congruent" mood/affect, along with intact memory and attention.[49] And in the February 22, 2023 mental status examination, the provider noted Ms. C. had an anxious mood but otherwise "normal" and "intact" findings.[50] Overall, these records support the ALJ's finding that Ms. C.'s mental status examinations were largely "good/intact/normal," including during winter months.[51] The ALJ did not mischaracterize this evidence.

In sum, the record shows the ALJ considered Ms. C.'s reports about the seasonal nature of her mental impairments and symptoms. He also considered evidence from winter months in assessing her limitations and concluding she was not as

[45] (Opening Br. 7, Doc. No. 8.)

[46] (*See* Tr. 745, 750.)

[47] (Tr. 745, 747.)

[48] (*See* Tr. 747.)

[49] (Tr. 753.)

[50] (Tr. 1114.)

[51] (Tr. 25.)

limited as she alleged. The ALJ cited more than a “mere scintilla”[52] of evidence; therefore, substantial evidence supports his findings. Accordingly, Ms. C. has not shown the ALJ erred in the mental RFC assessment. Because this is Ms. C.’s only claim of error, the Commissioner’s decision must be affirmed.

## CONCLUSION

The Commissioner’s decision is affirmed.

DATED this 1st day of September, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

[52] *Biestek*, 587 U.S. at 103.